UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EM4, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | No. |
| v. | ) | |
| | ) | |
| THERAFUSE, INC., | ) | 04 11774 NMG |
| | ) | |
| Defendant. | ) | MAGISTRATE JUDGE _Alexander_ |
| | ) | |

RECEIPT # _5/4/0/_
AMOUNT $ _/C_
SUMMONS ISSUED_✓_
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____6-13-04_

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

This is an action by EM4, Inc. ("EM4") to enforce its rights pursuant to an agreement for the development and production of prototypes for a medicine delivery device, under which defendant TheraFuse, Inc. ("TheraFuse") was required to, but did not, pay plaintiff for prototypes developed and produced as well as engineering services rendered by EM4. TheraFuse's failure is not based on any good faith dispute regarding the services rendered by EM4, or the amounts owed, but is instead, on information and belief, a willful and deceptive act designed to avoid its payment obligations or extract a settlement favorable to TheraFuse of the amount owed. As a result of TheraFuse's conduct, in addition to EM4's contractual and equitable claims, EM4 also seeks damages for unfair and deceptive business practices.

## PARTIES

1.     Plaintiff EM4 is a Delaware corporation with its principal place of business in Burlington, Massachusetts. EM4 is in the business of designing, developing and manufacturing optical and photonic devices and components. The corporation is a leading source of optical design and manufacturing services.

2.    Defendant TheraFuse is a California corporation with its principal place of business in Carlsbad, California.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.    Venue is properly in this Court, pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events and omissions giving rise to EM4's claims occurred in Massachusetts.

## FACTS COMMON TO ALL COUNTS

5.    On or about January 15, 2004, TheraFuse sent an initial purchase order to EM4 requesting engineering and prototype services for the development and production of a number of medicine delivery devices. The initial purchase order provides that the prototype devices will be produced on a time and materials basis in an amount not to exceed $50,000. A true and accurate copy of the initial purchase order, hereinafter the "Initial Purchase Order," is attached hereto as Exhibit 1.

6.    On or about January 16, 2004, EM4 provided an initial statement of work to TheraFuse in response to the Initial Purchase Order. Under the initial statement of work, TheraFuse is obligated to pay EM4 up to $50,000 for time and materials expended by EM4 in return for EM4's best efforts to develop and build the medicine delivery device prototypes ("prototypes"). A true and accurate copy of the initial statement of work, hereinafter the "Initial Statement of Work," is attached hereto as Exhibit 2.

7.    The Initial Purchase Order and Initial Statement of Work allow for subsequent

-2-

modifications and reflect the parties' expectation that the nature and scope of the prototypes developed and services requested under the agreement would change as the medicine delivery device project progressed.

8.    Dave Gillett, TheraFuse's Vice President of Manufacturing, accepted the terms of the Initial Statement of Work on or about January 19, 2004.

9.    EM4 requested that TheraFuse issue an amended purchase order on February 11, 2004. Due to design changes requested by TheraFuse and to typical and expected difficulties encountered in developing and producing the prototypes, EM4 proposed increasing the time and materials to be expended on the project to $130,000.

10.    EM4 provided a revised statement of work to TheraFuse on February 11, 2004. The revised statement of work obligates TheraFuse to pay EM4 up to $130,000 on a time and materials basis in return for EM4's best efforts to develop and build the prototypes. A true and accurate copy of the revised statement of work, hereinafter the "Revised Statement of Work," is attached hereto as Exhibit 3.

11.    On or about February 25, 2004, TheraFuse issued an amended purchase order to EM4, accepting the terms of the Revised Statement of Work. A true and accurate copy of the amended purchase order, hereinafter the "Amended Purchase Order," is attached hereto as Exhibit 4.

12.    Pursuant to the Amended Purchase Order, the Revised Statement of Work and the assurances of Mr. Gillett, EM4 began engineering and production work on the prototypes and, to date, has delivered eleven prototypes to TheraFuse. Production of the prototypes has required EM4 to engage in original engineering and development work.

13.   In March 2004, the fees and expenses incurred by EM4 on the project began approaching the $130,000 time and materials term set forth in the Amended Purchase Order and the Revised Statement of Work.  EM4 informed Mr. Gillett and TheraFuse of the costs of the project at that time.

14.   When apprised of the project's cost, Mr. Gillett repeatedly assured EM4 that TheraFuse would continue to pay EM4 for services performed and devices produced after exceeding the time and materials term.  Moreover, Mr. Gillett and TheraFuse continued to instruct EM4 to make design changes to the prototypes as EM4 approached and exceeded the time and materials term.

15.   In reliance upon Mr. Gillett's assurances, EM4 expended $50,828 for services performed and devices produced in addition to the $130,000 called for in the time and materials term of the Amended Purchase Order and Revised Statement of Work.

16.   To date, TheraFuse has paid only a total of $50,000 for all services performed and prototypes produced by EM4, despite the terms of the Amended Purchase Order and Revised Statement of Work and the assurances of Mr. Gillett.

17.   On or about June 29, 2004, EM4 requested in writing that TheraFuse pay the remaining $130,828 owed for services rendered and prototypes produced in connection with the medicine delivery device project.  True and accurate copies of the letter to TheraFuse are attached hereto as Exhibit 5.

18.   Having deliberately induced EM4 to continue working on the project, TheraFuse is now refusing EM4's request for payment for services rendered and prototypes produced in connection with the project.

-4-

## COUNT I – BREACH OF CONTRACT

19.    EM4 restates and incorporates by reference Paragraphs 1 through 18 above.

20.    EM4 and TheraFuse entered into a contract, whereby TheraFuse agreed to pay EM4 up to $130,000 for the time expended and materials purchased in connection with performing the work set out in the Amended Purchase Order and Revised Statement of Work.

21.    EM4 fully performed all of its obligations under the Amended Purchase Order and Revised Statement of Work.

22.    Despite EM4's full performance of all of its obligations, TheraFuse has breached the agreement by not paying EM4 in full for time expended and materials purchased.

23.    Despite formal written demand by EM4, TheraFuse has refused to pay EM4 for amounts outstanding, to the economic damage and harm of EM4 in an amount in excess of $75,000, excluding interest.

## COUNT II - BREACH OF ORAL CONTRACT

24.    EM4 restates and incorporates by reference Paragraphs 1 through 23 above.

25.    EM4 and TheraFuse entered into an oral contract whereby TheraFuse agreed to pay EM4 for time expended and materials purchased beyond $130,000 in return for EM4's performance of additional services and production of additional prototypes on behalf of TheraFuse. Dave Gillett, TheraFuse's Vice President of Manufacturing, agreed that TheraFuse would pay for time expended and materials purchased by EM4 beyond the $130,000 term set forth in the Amend Purchase Order and Revised Statement of Work. This agreement formed a binding and enforceable oral contract between EM4 and TheraFuse.

-5-

26.     Based on the working relationship and trust between EM4 and TheraFuse, the urgency of the business and operational issues facing TheraFuse, and verbal approval from Mr. Gillett, EM4 accepted Mr. Gillett's offer on behalf of TheraFuse and agreed to continue working on the medicine delivery device project. At all times relevant to the oral contract entered between EM4 and TheraFuse, Mr. Gillett represented that he was acting within his authority as Vice President of TheraFuse.

27.     EM4 fully performed all of its obligations under the oral contract.

28.     Despite EM4's full performance of all of its obligations, TheraFuse breached the oral contract by not paying EM4 in full for fees and expenses owed.

29.     Despite formal written notice by EM4, TheraFuse has refused to pay EM4 for amounts outstanding, to the economic damage and harm of EM4 in an amount in excess of $50,828, excluding interest.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

30.     EM4 restates and incorporates by reference Paragraphs 1 through 29 above.

31.     Implied in every contract, including those between EM4 and TheraFuse, is a covenant of good faith and fair dealing.

32.     TheraFuse's conduct, as alleged herein, violated the implied covenant of good faith and fair dealing. In particular, such violations include, but are not necessarily limited to: (a) requesting that EM4 expand its role and commit additional resources to the medicine delivery device project when it did not intend to pay for such services; and (b) inducing EM4 to continue to perform under the Amended Purchase Order and Revised Statement of Work by promising to pay outstanding invoices when it did not intend pay those invoices.

33.    As a direct result of TheraFuse's breach of the implied covenant of good faith and fair dealing, EM4 has incurred economic harm and damage in an amount to be determined at trial, but no less than $130,000.

### COUNT IV – UNJUST ENRICHMENT/QUANTUM MERUIT

34.    EM4 restates and incorporates by reference Paragraphs 1 through 33 above.

35.    TheraFuse has received from EM4 prototypes, engineering and development services, intellectual property and expertise, the reasonable value of which is in excess of $130,828, for which TheraFuse has not paid.  EM4 provided those prototypes, services, intellectual property and expertise based on its reasonable expectation that it would be paid by TheraFuse.

36.    TheraFuse led EM4 to reasonably expect that it would be paid its professional fees and expenses, which combined represent the reasonable value of the prototypes, services, intellectual property and expertise provided by EM4 in this context.

37.    TheraFuse, despite formal written demands by EM4, has not paid the amounts due to EM4 for the reasonable value of its prototypes, services, intellectual property and expertise and therefore has been unjustly enriched in an amount exceeding $130,828, excluding interest.

38.    TheraFuse is legally obligated to pay EM4 in an amount exceeding $130,828, excluding interest, for the reasonable value of its prototypes, services, intellectual property and expertise employed in the medical delivery device project.

### COUNT V – UNFAIR AND DECEPTIVE BUSINESS PRACTICES

39.    EM4 restates and incorporates by reference Paragraphs 1 through 38 above.

40.    TheraFuse's refusal to make payment to EM4 is in disregard of known contractual

-7-

arrangements.

41.    TheraFuse, despite knowing that it owes EM4 at least $130,828, has willfully breached its Agreement with EM4 and has refused all demands for payment, thus forcing EM4 to sue and causing EM4 additional damages, including, without limitation, attorneys' fees and court costs.

42.    TheraFuse's willful breach of known contractual relations, and its other conduct as described above, constitute knowing and willful unfair and deceptive acts or practices prohibited by Mass. G.L. c. 93A, § 11, and the regulations promulgated thereunder.

43.    TheraFuse's conduct has occurred and is occurring substantially within the Commonwealth.

44.    EM4 has suffered financial and other harm as a result of the defendants' unfair and deceptive business practices.

45.    EM4 is entitled to treble damages and attorney's fees as a result of TheraFuse's unfair and deceptive business practices.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court:

1.    Enter judgment against defendant with regard to all counts herein;

2.    Award EM4 damages in an amount to be determined at trial;

3.    Award EM4 treble damages and attorneys' fees pursuant to Mass. G.L. c. 93A, § 11;

4.    Award EM4 the costs and expenses of this litigation, including reasonable

attorneys fees and disbursements; and

5.    Order such further relief as is just and proper.

## **DEMAND**

EM4 demands a trial by jury on all claims so triable.

EM4, INC.,

By its attorneys,


_____
Anthony A. Scibelli (BBO #556507)
C. Alex Hahn (BBO #634133)
Scibelli and Whiteley, LLP
Old City Hall
45 School Street
3rd Floor
Boston, Massachusetts 02108
(617) 227-5725

       -and-

Michael J. Summersgill (BBO #632816)
Christopher B. Zimmerman (BBO #653854)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000


Dated:  August 13, 2004

# Purchase Order

2453 Impala Drive
Carlsbad, CA 92008

| Date | P.O. No. |
|------|----------|
| 1/15/2004 | 032453-257 |

| Vendor |
|--------|
| EM4 Photonics<br>Attn: Beth Haskell<br>2 Fourth Avenue<br>Burlington, MA 01803 |

| Ship To |
|---------|
| TheraFuse, Inc<br>2453 Impala Drive<br>Carlsbad, CA 92008 |

| Item No. | Description | Qty | U/M | Rate | Amount |
|----------|-------------|-----|-----|------|--------|
| 1. | Engineering and Prototype Services not to exceed $50,000.00.<br><br>-Prototype Assemblies, Quantity 25 each<br><br>-Time and Materials Basis<br><br>-Materials billed at cost +10%<br><br>-1/3 Deposit = $17,000.00 required at start<br><br>-Existing Non-Disclosure Agreement holds for this Project<br><br>-Exceptions and modifications must be submitted in writing to: David S. Gillett at TheraFuse, Inc. | | | 50,000.00 | 50,000.00 |

| **Total** | | **$50,000.00** |
|-----------|--|-------------|

| Phone # | Fax # |
|---------|-------|
| 760.579.0880 | 760.579.0330 |

| Web Site |
|----------|
| www.therafuse.com |



15 January 2004


David Gillett
**TheraFuse, Inc.**
2435 Impala Drive
Carlsbad, CA
92008

SoW#:  SoW 011504

Dear Dave;

Thank you for coming back to EM4 with your fast-turn prototype requirement.  As per our discussions over the past two days, we are fully prepared and equipped to take on the challenge of an expedited prototype design and build program of your patient-worn medicine delivery system.   The purpose of this letter and attached statement of work (SoW) is to establish a framework for the program on both technical and commercial grounds.  Upon your acceptance of the SoW and receipt of initial payment, we are prepared to launch headlong into this effort.   We look forward to initiating design work and materials procurement and to working with you, Brian and the rest of the Therafuse team.

Please review the SoW and let me know if there are any questions or issues regarding the terms outlined therein.  We are committed to the success of this program and would like to talk through any outstanding issues, commercial or technical, that may be of concern to you.

I will follow-up by phone to confirm purchase order details with you and seek closure on any remaining open issues.



Sincerely,



Beth C. Haskell
Account Development
EM4 Incorporated
2 Fourth Avenue
Burlington, MA 01803
Cell:  781/856-8898
Work:  781/221-6290 ext 231



## TheraFuse/EM4 Statement of Work for Prototypes

EM4 proposes to design and build rapid prototypes of the TheraFuse patient-worn medicine delivery device.  EM4 will work in conjunction with TheraFuse to secure BOM and necessary fixturing to complete the project in a timely manner.  The scope of the project is the delivery of 20 to 25 functional prototypes within a period of 4-6 weeks after receipt of full BOM.  TheraFuse and EM4 will mutually agree upon the clear statement of functionality for the prototypes.  It is anticipated that the delivered units will be functional to basic  performance requirements but will not necessarily meet the full detailed specifications  of the ultimate commercial end product.

### Prototype Program Deliverables:

**TheraFuse shall:**
- Define acceptable specifications for prototype units
- Provide any and all existing drawings and process documents to facilitate a rapid prototype build
- Supply Engineering support as necessary, including possible on-site visits to EM4

**EM4 shall:**
- Define and procure BOM to support the design and build of 25 functional modules
- Design and procure fixtures, tooling, test equipment and software necessary to complete the build
- Supply finished modules to TheraFuse
- Provide regular and timely progress updates to Therafuse, particularly during materials procurement phase

### Prototype Program Assumptions:

- Yield:  Given that there is no data on which to base acceptance range, module builds will be done in small lots with yield review after the lot build. TheraFuse and EM4 will negotiate in good faith regarding actual module performance to target specification in effort to yield 25 finished modules to TheraFuse for the prototype order.
- Functional test criteria and process details must be mutually agreed upon by TheraFuse and EM4.
- EM4 and TheraFuse will have program status discussion 1 week after start of program to review supply chain status and to determine if program is on track for timely finish.  TheraFuse may discontinue the program at this time but will be responsible for Time and Materials spent to date by EM4 on the program.
- If materials procurement delays threaten timely project completion during the development program, ThereFuse may discontinue the program with



immediate notice to EM4 and agreement to cover incurred costs up to the time of termination.
- In all instances, contract performance by EM4 will be on a best-effort basis
- Daily/weekly communication will be scheduled as needed to ensure program issues are understood by both TheraFuse and EM4.
- Technical Contact for EM4:  Alex Rosiewicz, CTO
- Technical Contact for TheraFuse:  Brian Catanzaro

**Phase 1 Pricing:**       **TheraFuse will be invoice for the following**

| Item | Unit $ | Description |
|---|---|---|
| 200 - 250 hours | $175/hour | Engineering time for design and build of rapid prototypes |
| Materials | Cost +10% | Cost of materials or component NRE plus 10% handling |
| Equipment | Cost +10% | Cost of equipment plus 10% handling |

**Terms:**
- Initial Purchase Order from TheraFuse to be issued as "not to exceed $50,000"
- $17,000 will be paid to EM4 at start of program as a retainer to initiate supply chain
- Payment:          Net 30 days for invoice after retainer is consumed
- Validity:          This quotation is valid for 30 days
                     This quotation is subject to mutually agreed upon terms and conditions.



11 February 2004

David Gillett
**TheraFuse, Inc.**
2435 Impala Drive
Carlsbad, CA
92008

SoW#:  SoW 021104

Dear Dave;

Following up on our conversation regarding expenses incurred to date on the Rapid Prototype program for TheraFuse, I have attached Time and Material spreadsheets for your review.  As discussed, the original target of $50,000 has been exceeded; however, it is apparent to the Engineering and Design Team working diligently with Brian through the nights and weekends, that the original budget was under scoped.  This is the type of project that must be delved into before the true costs are understood.

Given these actual expenses plus the estimate on additional time to complete the project, we are requesting an increase to the P.O. to bring the Time up to $100,000 and the Materials to $30,000.  I have revised the original SoW to include the amended P.O. requirement.

Please let me know if you require any additional detail in order to issue the P.O. amendment.

We look forward to be your outsourcing partner of choice for future projects!


Sincerely,



Beth C. Haskell
Account Development
EM4 Incorporated
2 Fourth Avenue
Burlington, MA 01803
Cell:  781/856-8898
Work:  781/221-6290 ext 231



## TheraFuse/EM4 Statement of Work for Prototypes

EM4 proposes to design and build rapid prototypes of the TheraFuse patient-worn medicine delivery device. EM4 will work in conjunction with TheraFuse to secure BOM and necessary fixturing to complete the project in a timely manner. The scope of the project is the delivery of 20 to 25 functional prototypes within a period of 4-6 weeks after receipt of full BOM. TheraFuse and EM4 will mutually agree upon the clear statement of functionality for the prototypes. It is anticipated that the delivered units will be functional to basic performance requirements but will not necessarily meet the full detailed specifications of the ultimate commercial end product.

### Prototype Program Deliverables:

**TheraFuse shall:**
- Define acceptable specifications for prototype units
- Provide any and all existing drawings and process documents to facilitate a rapid prototype build
- Supply Engineering support as necessary, including possible on-site visits to EM4

**EM4 shall:**
- Define and procure BOM to support the design and build of 25 functional modules
- Design and procure fixtures, tooling, test equipment and software necessary to complete the build
- Supply finished modules to TheraFuse
- Provide regular and timely progress updates to Therafuse, particularly during materials procurement phase

### Prototype Program Assumptions:

- Yield: Given that there is no data on which to base acceptance range, module builds will be done in small lots with yield review after the lot build. TheraFuse and EM4 will negotiate in good faith regarding actual module performance to target specification in effort to yield 25 finished modules to TheraFuse for the prototype order.
- Functional test criteria and process details must be mutually agreed upon by TheraFuse and EM4.
- EM4 and TheraFuse will have program status discussion 1 week after start of program to review supply chain status and to determine if program is on track for timely finish. TheraFuse may discontinue the program at this time but will be responsible for Time and Materials spent to date by EM4 on the program.
- If materials procurement delays threaten timely project completion during the development program, ThereFuse may discontinue the program with



immediate notice to EM4 and agreement to cover incurred costs up to the time of termination.
- In all instances, contract performance by EM4 will be on a best-effort basis
- Daily/weekly communication will be scheduled as needed to ensure program issues are understood by both TheraFuse and EM4.
- Technical Contact for EM4:  Alex Rosiewicz, CTO
- Technical Contact for TheraFuse:  Brian Catanzaro

**Pricing:**                   **TheraFuse will be invoice for the following**

| Item | Unit $ | Description |
|---|---|---|
| Initial 400 hours | $175/hour | Engineering time for design and build of rapid prototypes |
| 401+ hours | $145/hour | Engineering time for design and build of rapid prototypes |
| Materials | Cost +10% | Cost of materials or component NRE plus 10% handling |
| Equipment | Cost +10% | Cost of equipment plus 10% handling |

**Terms:**
- Initial Purchase Order from TheraFuse to be issued as "not to exceed $50,000"
- An amended P.O. from TheraFuse to be issued for Time "not to exceed $100,000" and Materials "not to exceed $30,000"
- $17,000 will be paid to EM4 at start of program as a retainer to initiate supply chain
- Payment:       Net 30 days for invoices after retainer is consumed, time and materials to be invoiced every two weeks.
- Validity:       This quotation is valid for 30 days
                 This quotation is subject to mutually agreed upon terms and conditions.

# Purchase Order

**2453 Impala Drive**
**Carlsbad, CA 92008**

| Date | P.O. No. |
|------|----------|
| 1/15/2004 | 032453-257 |

| Vendor |
|--------|
| EM4 Photonics |

| Ship To |
|---------|
| Therafuse, Inc<br>2453 Impala Drive<br>Carlsbad, CA 92008 |

| Item No. | Description | Qty | U/M | Rate | Amount |
|----------|-------------|-----|-----|------|--------|
| | | | | 130,000.00 | 130,000.00 |
| | Engineering and Prototype Services not to exceed $130,000.00<br>-Prototype Assemblies, Quantity 25 each<br>-Time (100,000.00) and Materials Basis(30,000.00)<br>-Materials Billed at cost + 10%<br>-1/3 Deposit - $17,000 required at start<br>-Existing Non-Disclosure Agreement holds for this Project<br>-Exceptions and modifications must be submitted in writing to: David S. Gillet at Therafuse, Inc. | | | | |
| | **Total** | | | | $130,000.00 |

| Phone # | Fax # |
|---------|-------|
| 760.579.0880 | 760.579.0330 |

| Web Site |
|----------|
| www.therafuse.com |

# WILMER CUTLER PICKERING
## HALE AND DORR LLP

June 29, 2004

Michael J. Summersgill

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6261
+1 617 526 5000 fax
michael.summersgill@wilmerhale.com

**By Facsimile and Federal Express**

Richard Piazza, CEO
TheraFuse, Inc.
2453 Impala Drive
Carlsbad, CA 92008

Dear Mr. Piazza:

We represent EM4, Inc. We write regarding TheraFuse, Inc.'s refusal to pay EM4 for work performed on behalf of TheraFuse.

On January 19, 2004, TheraFuse engaged EM4 to work on a project to build prototypes of a medicine delivery device. The parties agreed that EM4 would perform the work on a "time and materials" basis. TheraFuse's initial purchase order specified that the work would not exceed $50,000. On February 25, 2004, however, TheraFuse agreed to an amended purchase order for $130,000.

The agreement between the companies contemplated that TheraFuse would provide EM4 with the design for the prototypes. *See* February 11, 2004 Statement of Work, p. 1 ("TheraFuse shall . . . [p]rovide any and all existing drawings and process documents necessary to facilitate the prototype build."). Recognizing that EM4 was attempting to build a device that had never before been built, the agreement also explicitly contemplated that EM4 would perform the work on a "best-effort basis." *See Id.* at 2.

Pursuant to the agreement, EM4 commenced the project and built prototypes according to the designs and drawings provided by TheraFuse. To date, EM4 has delivered eleven prototypes to TheraFuse. Despite EM4's best efforts, TheraFuse has paid only $50,000 of $130,000 owed on the amended purchase order, and none of an additional $50,828 expended by EM4 on TheraFuse's behalf. TheraFuse, therefore, now owes EM4 $130,828 for work performed.

Your assertion that TheraFuse is not obligated to make further payments because only two working prototypes have been delivered is incorrect for a number of reasons. First, the project involved developing devices that had never before been built. As TheraFuse is well aware, there are no guarantees in such development work that fully functioning devices can be constructed within a certain period of time and for a specific cost. This is why the parties agreed that the work would be performed on a "*time and materials*" and "*best-effort*" basis. Second, it is TheraFuse's design, not EM4's workmanship, that has proven to be flawed. Indeed, TheraFuse's requested design changes (e.g. to the angled capillary) caused significant delay and an increase in costs. Finally, as the project progressed and EM4 apprised TheraFuse of the project's status, TheraFuse's Vice President of Manufacturing, David Gillett, repeatedly assured

Richard Piazza, CEO
June 29, 2004
Page 2

EM4 that TheraFuse would pay for EM4's work.  In reliance upon Mr. Gillett's assurances, EM4 expended an additional $50,828 beyond the time and materials limits set forth in the amended purchase order.  TheraFuse is therefore legally obligated to pay EM4 for the full value of the work performed.

EM4 remains interested in resolving this dispute on an amicable basis.  TheraFuse's refusal to pay the $130,828 for the work performed, however, has caused EM4 significant damage.  Should TheraFuse continue to refuse to honor its obligations to EM4, we will take all appropriate legal action necessary to protect EM4's interests.

Please let me know if you have any questions.

Very truly yours,

Michael J. Summersgill

MJS/jmm

JS44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as require ... law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**EM4, Inc.**

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

*Anthony A. Scibelli, Esq.*
*Scibelli and Whiteley, LLP*
*Old City Hall, 45 School Street, 3rd Floor*
*Boston, MA 02108*          *(617)227-5725*

## DEFENDANTS

**TheraFuse, Inc.**

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

*Robert S. Gerber, Esq.*
*Sheppard Mullin Richter & Hampton LLP*
*12544 High Bluff Drive, Suite 300*
*San Diego, CA 92130-3051*

## II. BASIS OF JURISDICTION    (Place an-X" in One Box Only)

_ 1  U.S. Government Plaintiff      _ 3  Federal Question
                                        (U.S. Government Not a Party)
_ 2  U.S. Government Defendant    X 4  Diversity
                                        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an »X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

|                                    | PLT | DEF |                                                      | DEF | DEF |
|------------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State              | X 1 | _ 1 | Incorporated or Principal Place of Business In This State | _ 4 | _ 4 |
| Citizen of Another State           | _ 2 | X 2 | Incorporated and Principal Place of Business In Another State | _ 5 | _ 5 |
| Citizen or Subject of a Foreign Country | _ 3 | _ 3 | Foreign Nation                                  | _ 6 | _ 6 |

## IV. NAT URE O F SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALT | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|-------------------|------------|----------------|
| _ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | _ 610 Agriculture | _ 422 Appeal 28 USC 158 | _ 400 State Reap ortionment |
| _ 120 Marine | _ 310 Airplane | _ 362 Personal Injury — | _ 620 Other Food & Drug | _ 423 Withdrawal 28 USC | _ 410 Antitrust |
| _ 130 Miller Act | _ 315 Airplane Product | Med. Malpractice | _ 625 Drug Related Seizure of | I57 | _ 430 Banks and Banking |
| _ 140 Negotiable Instrument | Liability | _ 365 Personal Injury — | Property 21 USC | | _ 450 Commerce/ICC Rates/etc. |
| _ 150 Recovery of Overpayment | _ 320 Assault, Libel & | Product Liability | _ 630 Liquor Laws n | | _ 460 Deportation |
| & Enforcement of Judgment | Slander | _ 368 Asbestos Personal | _ 640 R.R. & Truck n | **PROPERTY RIGHTS** | _ 470 Racketteer Influenced and |
| _ 151 Medicare Act | _ 330 Federal Employers' | Injury Product Liability | _ 650 Airline Regs. | _ 820 Copyrights | Corrupt Organizations |
| _ 152 Recovery of Defaulted | Liability | | _ 660 Occupational Safety /Health | _ 830 Patent | _ 810 Selective Service |
| Student Loans (Excl. Veterans) C | _ 340 Marine | **PERSONAL PROPERTY** | n   _ 690 Other | _ 840 Trademark | _ 850 Securities/Commodities/ |
| _ 153 Recovery of Overpayment | _ 345 Marine Product | _ 370 Other Fraud Liability | | | Exchange |
| of Veteran's Benefits | Liability | _ 371 Truth in Lending n | **LABOR** | **SOCIAL SECURITY** | _ 875 Customer Challenge 12 USC |
| _ 160 Stockholders' S suits | _ 350 M otor V chicle | _ 380 Other Personal | _ 710 Fair Labor Standards Act | _ 861 HIA(1395ff) | 3410 |
| X190 Other Contract | _ 355 M otor V chicle | Property Damage | _ 720 Labor/Mgmt. Relations | _ 862 Black Lung (923) | _ 891 Agricultural Acts |
| _ 1 95 Contract Product Liability | Product Liability | _ 385 Property Damage | _ 730 Labor/M gmt .Reporting & | _ 863 DIW C/DIW W (405 (g)) | _ 892 Economic Stabilization Act |
| | _ 360 Other Personal Injury | Product Liability | Disclosure Act | _ 864 SSID Title XVI | _ 893 Environ mental Matters |
| | | | _ 740 Railway Labor Act | _ 865RSI(405(g)) | _ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER** | _ 790 Other Labor Litigation | | _ 895 Freedom of Information Act |
| _ 210 Land Condemnation | _ 441 Voting | _ 510 Motions to Vacate | _ 791 Empl. Ret. Inc. Security | **FEDERAL TAX SUITS** | _ 900 Appeal of Fee under Equal |
| _ 220 Foreclosure | _ 442 Employment | Sentence Habeas Corpus: | Act | _ 870 Taxes (U.S. Plaintiff or | access to Justice |
| _ 230 Rent Lease & Ejectment | _ 443 Housing/ | _ 530 General | | Defendant nt) | _ 950 Constitutionality o f State |
| _ 240 Torts to Land | Accommodations n | _ 535 Death Penalty | | _ 871 IRS —Third P arty 26 | Statutes |
| _ 245 Tort Product Liability | _ 444 Welfare | _ 540 Mandamus & Other n | | USC 7609 | _ 890 Other Statutory Actions |
| _ 290 All Other Real Property | _ 440 Other Civil Rights | _ 550 Civil Rights | | | |
| | | _ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

X 1  Original
Proceeding
_ 2  Removed from
State Court
_ 3  Remanded from
Appellate Court
_ 4  Reinstated or
Reopened
_ 5  Transferred from
another district
(specify)
_ 6  Multidistrict
Litigation
_ 7  Appeal to
District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

*28 U.S.C. § 1332; Breach of Contract; M.G.L.C. 93A*

## VII. REQUESTS IN COMPLAINT

_ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:    _X_ Yes    __ No

## VIII. RELATED CASE(S)    (See instructions):
IF ANY

Therafuse v. EM4, Inc.

JUDGE _____

DOCKET NUMBER _____

**Superior Court of California, San Diego County, Case # GIN 038215**

Date  *8/13/04*

SIGNATURE OF ATTORNEY OF RECORD

Receipt # _____  _ Amoun _____  Applying IFP _____  Judge _____  Mag.Judge _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)


*EM4, Inc. v. TheraFuse, Inc.*


2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUITCODE LISTED ON THE CIVIL
COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).


___  I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___  II.    195, 368, 400, 440, 441-444, 540, 550, 555,625, 710, 720, 730,    *Also complete A3 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      for patent, trademark or copyright cases

X    III.   110,120,130,140,151,190,210,230,240,245,290,310,
            315, 320, 330, 340, 345, 350, 355, 360, 362,365, 370, 371,
            380,385,450,891.

___  IV.    220, 422, 423, 430, 460, 510, 530, 610, 620,630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

___  V.     150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1 (G)). IF MORE THAN ONE PRIOR RELATED CASE
    HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.


4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?
                                                                 YES        ( NO )

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?   (SEE 28 USC §2403)
                                                                 YES        ( NO )
    IF SO, IS THE U.S.A. ORAN OFFICER, AGENT OR EMPLOYEE OF THE U.S. APARTY?
                                                                 YES          NO

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
    28 USC §2284?
                                                                 YES        ( NO )

7.  DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
    COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
    SAME DIVISION? - (SEE LOCAL RULE 40.1 (D)).
                                                             ( YES )          NO

    A.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

          ( EASTERN DIVISION )          CENTRAL DIVISION              WESTERN DIVISION

    B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
          GOVERNMENTAL AGENCIES, RESIDING M MASSACHUSETTS RESIDE?

          EASTERN DIVISION              CENTRAL DIVISION              WESTERN DIVISION

(PLEASE TYPE OR PRINT) ATTORNEY'S NAME    *Anthony A. Scibelli and C. Alex Hahn*

ADDRESS    *Old City Hall, 45 School Street, 3rd Floor, Boston, MA 02108*

TELEPHONE NO.    *617-227-5725*

(Cover sheet local.wpd- 11/27/00)